JOHNSON et al. v. JOHNSON et al.
(No. 1679.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 14, 1916. Rehearing Denied Jan. 18, 1917.)

1. APPEAL AND ERROR ⊚⇒662(1)—RECORD—CONCLUSIVENESS—EVIDENCE.
    The appellate court is bound by the evidence in the record on appeal.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2850; Dec. Dig. ⊚⇒662(1).]

2. APPEAL AND ERROR ⊚⇒150(2)—RIGHT TO APPEAL—INTEREST IN SUBJECT-MATTER.
    Where plaintiffs in a suit for partition of their ancestor's land alleged that one of defendants by fraud had acquired a deed from the ancestor to part of the land, and by supplemental petition averred that such defendant since suit was brought had conveyed his interest in the land, and such defendant answered that, while he had sold such portion, he had warranted title thereto, he was required to prove the fact, and

without such proof he cannot complain of the judgment against him.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 935–938; Dec. Dig. ⊚⇒150(2).]

3. PLEADING ⊚⇒36(3)—ADMISSION.
    Defendant's answer that, while he had sold the land, he had warranted the title, must be taken as an admission, and he may not insist that he is the owner of the land.
    [Ed. Note.—For other cases, see Pleading, Cent. Dig. § 82; Dec. Dig. ⊚⇒36(3).]

4. APPEAL AND ERROR ⊚⇒151(2)—RIGHT TO APPEAL—INJURY FROM JUDGMENT.
    There being no evidence in the record tending to show that the other defendants are either purchasers from their codefendant or have any claim upon the land except a deed, for an interest for which the court gave them judgment, they show no injury from the judgment.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 947, 948; Dec. Dig. ⊚⇒151(2).]

5. TRIAL ⊚⇒139(1)—QUESTION FOR JURY.
    The weight of the evidence is for the jury.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341; Dec. Dig. ⊚⇒139(1).]

6. DEEDS ⊚⇒68(1½)—VALIDITY — INCOMPETENCY.
    Each case pertaining to mental disability of a grantor must be decided by its own circumstances.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 151; Dec. Dig. ⊚⇒68(1½).]

7. DEEDS ⊚⇒78—EVIDENCE—SUFFICIENCY.
    Evidence held sufficient to take to the jury the question of the extent of the mental disability of deceased at the time of executing deeds to defendant.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 648; Dec. Dig. ⊚⇒78.]

8. TRIAL ⊚⇒350(3)—SPECIAL ISSUES—MENTAL CAPACITY OF GRANTOR.
    An issue calling for a finding whether at the time the deeds were made the grantor had mental capacity sufficient to understand that she was conveying the land to the grantee was in accordance with the rule that, if the grantor has sufficient mental ability to comprehend what he is doing and to understand the nature of his act, his deed must be deemed that of a person of sound mind.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 829–831; Dec. Dig. ⊚⇒350(3).]

9. DEEDS ⊚⇒68(1½)—CAPACITY OF GRANTOR—EVIDENCE OF INCOMPETENCY.
    In order to avoid a deed executed by deceased, it would not be necessary to show that the grantor was insane, or in such a state of imbecility as to render her entirely incapable of executing a valid deed.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 151; Dec. Dig. ⊚⇒68(1½).]

10. PARTITION ⊚⇒114(2)—COSTS.
    If defendants contest the title or right of successful plaintiffs in a partition suit, they are liable for and to the extent of the costs incurred thereby.
    [Ed. Note.—For other cases, see Partition, Cent. Dig. § 445; Dec. Dig. ⊚⇒114(2).]

11. PARTITION ⊚⇒114(3)—PARTITION AMONG HEIRS—CHARGES UPON LAND PARTITIONED.
    In a suit for partition of land among heirs, court costs incurred in the administration of the estate of the intestate were properly allowed as a charge on the lands divided.
    [Ed. Note.—For other cases, see Partition, Cent. Dig. § 446; Dec. Dig. ⊚⇒114(3).]

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**12. PARTITION ☞85 — PARTITION AMONG HEIRS—CHARGES UPON LAND PARTITIONED.**

In a suit for partition of land among heirs, the value of the improvements placed on the land by one of the parties was properly allowed as a charge against the land divided, since he was entitled either to his improvements or their value.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 236–245; Dec. Dig. ☞85.]

**13. PARTITION ☞87 — PARTITION AMONG HEIRS—CHARGES UPON LAND PARTITIONED.**

In a suit for partition of land among heirs, debts of the estate paid by a party after the death of the intestate were properly charged upon the lands divided.

[Ed. Note.—For other cases, see Partition, Cent. Dig. § 253; Dec. Dig. ☞87.]

Appeal from District Court, Rusk County; W. C. Buford, Judge.

Suit for partition by Joe Johnson and others against Gus Johnson and others. Judgment for plaintiffs, and defendants appeal. Modified and affirmed.

The amended petition of appellees, Joe Johnson and others, was for partition: (1) Of 164 acres of land of the K. B. Dance survey; (2) of 65 acres of land off the east half of a tract, parts of the K. B. Dance and the J. B. Evans surveys; and (3) of 108 acres of land of the N. H. Fowler survey. The petition alleges that on August 7, 1907, Henry Johnson and wife, Amy Johnson, executed a deed to Gus Johnson to their homestead of 164 acres, and to Joe Johnson to the east half of 65 acres, solely as a trust to support the grantors during their respective lives and to facilitate the settlement of their estate after their death by delivery to and partition among their respective heirs, and that each of the said grantees accepted the trust, and have never denied the trust, but admitted same. Joe Johnson alleged that he admitted the trust. The petition further alleges that on September 20, 1911, Gus Johnson, through fraud and undue influence upon the weak mind of Amy Johnson, procured her to execute a deed to him to her interest in the 164-acre tract and in the 108-acre tract. The plaintiffs also claim for rent, appropriation of timber by Gus Johnson, and reimbursements for debts of the estate paid by them.

The defendants answered, denying the deed to 164 acres was a conveyance in trust, and denied the allegations of fraud and undue influence and mental incapacity of Amy Johnson in making the deeds of 1911, and pleaded limitation. The plaintiffs by supplemental petition averred that Gus Johnson had conveyed all interest he had in the property before and since the commencement of the suit. The defendant Gus Johnson replied "that, while he had sold the tracts of land described in plaintiffs' petition, he has warranted the title to the same to his vendees, and is therefore a proper party to the suit." The other defendants, except Alford, averred that they had an interest in the land, and adopted the answer of Gus Johnson, and specially pleaded limitation.

The case was tried before a jury on special issues. The jury made the findings that the deeds of August 7, 1907, were conveyances in trust, that Gus Johnson did not disavow the trust and claim the land as his own until September 20, 1911, and that Amy Johnson did not have mental capacity sufficient to understand that she was conveying the land to Gus Johnson by deeds of September 20, 1911. There is evidence to support the findings of the jury. Suit for partition by Joe Johnson and others against Gus Johnson was filed June 6, 1914. The defendants admit that the parties in suit are entitled to their proportionate share of an undivided one-half interest in and to 108 acres, and make the claim on appeal that the other one-half interest is absolute under the deed from Amy Johnson to Gus Johnson of date September 20, 1911. There is no question of title involved in the appeal as to the 65-acre tract. As to the 164-acre tract it is the contention of the appellants that the deed to Gus Johnson to such tract dated August 7, 1907, is an absolute conveyance. It would serve no purpose to copy the deed in this statement; it is in the record and may be referred to.

Beard & Davidson, of Marshall, and Futch & Tipps, of Henderson, for appellants. John R. Arnold and J. W. McDavid, both of Henderson, for appellees.

LEVY, J. (after stating the facts as above). [1, 2] The appellants by the first assignment of error claim that the court erred in not rendering a judgment for them for the entire 164 acres of land. Appellees in their brief insist that the appellants may not claim that they or either of them have suffered any injury respecting the 164 acres of land: First, because appellant Gus Johnson pleaded and admitted that he had sold it and warranted the title; and, second, because the other appellants failed to prove that they owned or had acquired any title to any part of this tract except the inheritable interest of Hoxie Johnson, which the court awarded them. And in view of the evidence in the record on appeal, which this court is bound by, it may not be said that the insistence of appellees is not correct. Appellees' supplemental petition charged that Gus Johnson had sold all his interest in the property; and Gus Johnson made reply averring "that, while he has sold the tracts of land described in the plaintiffs' petition, he has warranted the title to the same to his vendees and is therefore a proper party to the suit." And, looking to the statement of facts, we fail to find any evidence showing or going to show that Gus Johnson had, as alleged, warranted the title to the land to any vendee. Alleging that he had warranted the title would require Gus Johnson to prove the fact; for his

liability as a warrantor depended entirely upon proof that he had warranted the title.

[3] So, taking the reply answer of Gus Johnson as an admission of fact of record, as we must, that he has conveyed and parted with his interest in the 164 acres of land, then Gus Johnson may not insist that he is the owner of this tract of land. And, assuming that Gus Johnson may make himself a party, as he pleads, to defend an alleged warranty of title to the 164 acres of land, there is no proof that he executed a warranty to a vendee so as to make himself legally liable on a warranty. And we fail to find any evidence showing or tending to show that the other defendants are either the vendees of Gus Johnson or have any conveyance to or claim upon the 164 acres, except the deed from Hoxie Johnson to his inheritable interest, and for which latter interest the court gave these defendants a judgment.

[4] Therefore, for the want of injury appearing in the record to appellants, this assignment of error, as well as all the other assignments pertaining to the 164 acres of land, must be overruled.

The fourth assignment of error is that the evidence is insufficient as a matter of law to show that Amy Johnson at the time she executed the two deeds to Gus Johnson on September 20, 1911, did not have mental capacity sufficient to know and understand that she was conveying the lands to Gus Johnson. The evidence was conflicting respecting the mental capacity of Amy Johnson. There is evidence to show that the mind of Amy Johnson was good. And there is evidence going to show that "her mind was not very sound; she couldn't talk intelligently, and she could not talk about one subject any length of time;" "she was mindless at times, would not know where she was or at whose house she was or anything at times;" "she did not have good mind, and we had to always keep some one with her;" "it was weak after she lost her husband, and grew worse, grew weaker and weaker, and she finally did go crazy." It was shown that Amy Johnson was suffering from a severe disease affecting the body and mind.

[5-7] The weight of the evidence is for the jury. And it is the rule that each case pertaining to mental disability must be decided by its own circumstances. It is believed that the evidence as a whole was sufficient to make an issue for the decision of the jury as to extent of the mental disability of Amy Johnson at the time of executing the deeds, and that it was required of the trial court to submit the issue, as he did, to the jury for finding of the fact.

Appellants predicate error, by the seventh assignment, upon the following issue submitted to the jury:

"State whether or not at the time the deeds from Amy to Gus Johnson were made Amy had mental capacity sufficient to understand that she was conveying the land to Gus."

And by the eighth assignment of error, presented with the seventh assignment, appellants complain of the refusal of the following:

"Did Amy Johnson at the time she conveyed to her son Gus Johnson her interest described in the two deeds of September, 1911, possess the mental capacity to so contract, deed, and dispose of said lands? Now in this connection you are instructed that all persons are presumed by law to be sane and mentally sound until the contrary shall be made to appear; and in this case the burden of proof is upon the plaintiffs to establish by a preponderance of the testimony her insanity or mental incapacity to make said deeds, and in this particular you are instructed that the mental incapacity, if any, must have existed at the particular moment of the execution and delivery of said deeds; and by the term 'mental incapacity,' as herein used, is meant a state of mind incapable of comprehending and understanding the effect and purpose of the act then being done."

[8] Appellants maintain the proposition that the court's charge did not, and the requested charge did, give the proper rule to determine the mental disability of the grantor, Amy Johnson. The effect of the court's charge is to say to the jury that if, under the evidence, at the date of the deeds Amy Johnson did possess sufficient strength of mind to understand that she was transferring her title to Gus Johnson, then the mind of the grantor, Amy Johnson, was sufficiently sound to render her deed valid. This charge does not make the invalidity of the deed depend upon the finding merely of weakness of understanding of Amy Johnson, but requires a finding of weakness of understanding to the extent and degree of not comprehending and understanding the nature and consequences of her act. The court's charge is in accordance with the rule that, if the grantor has sufficient mental ability to comprehend what he is doing and to understand the nature of his act, his deed must be deemed that of a person of sound mind. Caddell v. Caddell, 62 Tex. Civ. App. 461, 131 S. W. 433; 1 Devlin on Real Estate (3d Ed.) § 69.

[9] It is not necessary to show that the grantor was insane or in such a state of imbecility as to render him entirely incapable of executing a valid deed. Allore v. Jewell, 94 U. S. 506, 24 L. Ed. 260.

If there was, as appears, an issue of fact for decision by the jury as to the mental capacity of Amy Johnson to make the deed to Gus Johnson for her interest in the 108 acres of land, then the court did not err, as insisted in the ninth and tenth assignments of error, in not rendering judgment for appellant Alford for one-half of the 108 acres as purchaser under Gus Johnson; for the verdict of the jury was that the deed of Amy Johnson to Gus Johnson to the 108 acres was invalid for mental disability of Amy Johnson, the grantor.

[10] The twelfth assignment of error complains of adjudging costs against defendants. The legal effect of the decree is to

charge against the defendants the costs incurred in determining the title and the share or interest of each joint owner in the real estate sought to be divided. It does not reach to the costs that may subsequently to the date of the present decree be incurred in making and completing the final partition. If the defendants contest the title or right of the successful plaintiffs, they are liable for and to the extent of the costs thereby incurred. Johns. v. Northcutt, 49 Tex. 444; Keener v. Moss, 66 Tex. 184, 18 S. W. 447.

[11-13] The court in the decree made a charge against the lands divided: (1) Of $179.40 and $75 in favor of Jerry Johnson; (2) to Amanda Smith $20.80; and (3) to Jerry to value of his improvements on the land to the amount of $75 in case the improvements made by Henry Johnson on the tract of land cannot be alloted to him without detriment to the other allottees. The $20.80 allowed to Amanda Smith as a charge on the lands divided was in payment of the court costs incurred in the administration of the estate of Henry Johnson, deceased. This claim may be made a charge against the lands. Hanrick v. Gurley, 93 Tex. 458, 54 S. W. 347, 55 S. W. 119, 56 S. W. 330. And Jerry Johnson is entitled to have the improvements, or their value, placed by him on tract No. 3. And Jerry Johnson would be entitled to have a charge made upon the lands for all the debts of the estate of Henry Johnson, deceased, paid by him after the death of Henry Johnson. The $75 was paid, it appears, after the death of Henry Johnson. But all of the $179.40 debt of Henry Johnson was not paid by Jerry Johnson after the death of Henry Johnson; $123.25 of the $179.40 was paid by Jerry Johnson during the lifetime of Henry Johnson, at the request and instance of his father, Henry Johnson. This amount was a debt against the father in favor of Jerry Johnson, and in consequence would be a debt against the estate. Being a debt against the estate, it would have to be presented and allowed as a claim against the estate and collected after allowance as claims against an estate are allowed and directed by the statute to be collected. Being a debt of the father paid by Jerry Johnson in the lifetime of the father would not authorize, in equity, the charging of such debt upon the lands divided. Rose v. England, 51 Tex. 617. To be a charge upon the lands to be divided the expenditure must have been in protection of the estate or in behalf of the estate after the death of Henry Johnson. The judgment of the district court must therefore be modified to the extent of denying to Jerry Johnson a charge upon the lands to the extent of $123.25 of the $179.40, and as so modified the judgment will be affirmed.

In view of the modification of the judgment affecting only the appellee Jerry Johnson, and appellants obtained that relief against him, the costs of appeal will be taxed against Jerry Johnson.

Modified and affirmed.